IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LISA M. PARKER, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 2:15-cv-874-NBF |
| | ) | |
| v. | ) | |
| | ) | |
| NATIONSTAR MORTGAGE LLC, | ) | |
| *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**

**I. INTRODUCTION**

This civil action arises from events relating to a mortgage that Plaintiff Lisa M. Parker (a/k/a Lisa Youngblood) executed in favor of Countrywide Bank, FSB ("Countrywide") in September 2008. On or around September 15, 2008, Plaintiff borrowed $76,125.00 from Countrywide, as evidenced by a promissory note which Plaintiff signed on that date. (*See* Defs.' Ex. B, Docket No. 7-1 at pp. 34-35.)[1] The loan was secured by a mortgage on Plaintiff's residential property, located at 38 Crestline Court in the City of Pittsburgh. (*See* Defs.' Ex. A, Docket No. 7-1 at pp. 2-12.) The mortgage was subsequently assigned to Nationstar Mortgage LLC ("Nationstar"). (*See* Compl., Count II at ¶5, Docket No. 1-3; Defs.' Ex. B, Docket No. 7-1 at pp. 19-20, ¶1(d).)

On May 8, 2014, Nationstar commenced foreclosure proceedings against Plaintiff in the Allegheny Court of Common Pleas, alleging that Plaintiff had defaulted on her mortgage payments. (*See* Defs.' Ex. B, Docket No. 7-1 at pp. 14-39.) These proceedings were prosecuted

---

[1] The within facts are a matter of public record and can properly be considered by this Court in accordance with Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1426 (3d Cir.1997); *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.,* 998 F.2d 1192, 1196 (3d Cir.1993).

on Nationstar's behalf by the law firm of Shapiro & DeNardo. (*See* Defs.' Ex. E, Docket No. 7-1 at pp. 95-96.) On October 27, 2014, the Court of Common Pleas entered a default judgment in favor of Nationstar and against Plaintiff in the amount of $76,314.38. (*Id*.) Thereafter, a writ of execution was issued, and the property was ultimately sold to Nationstar at a sheriff's sale. (*Id*.; *see also* Defs.' Ex. G, Docket No. 7-1 at pp. 115-18.)

At around the same time that Nationstar commenced its foreclosure action, Plaintiff commenced her own breach of contract action against Nationstar in the Allegheny Court of Common Pleas. (*See* Defs.' Ex.C, Docket No. 7-1 at 41-90; Defs.' Ex. D, Docket No. 7-1 at pp. 92-93.) Plaintiff's theory was that, under the terms of the September 15, 2008 promissory note, she had actually loaned Nationstar and various Doe defendants the sum of $120,000.00, and the defendants, having failed to repay that sum, were thereby in breach of the note's terms. (*See* Defs.' Ex. C, Docket No. 7-1, at pp. 44-46.) After Nationstar filed preliminary objections to Plaintiff's complaint, the court sustained the preliminary objections and dismissed the breach of contract Action with prejudice. (*See* Defs.' Ex. D, Docket No. 7-1, at pp. 92-93; Defs.' Ex. H, Docket No. 7-1, at pp. 120-27.)

In the instant lawsuit, Plaintiff has sued Nationstar and Shapiro & DeNardo for alleged violations of the Fair Credit Reporting Act, 15 U.S.C. §§1681 *et seq.*, the Fair Debt Collection Practices Act, 15 U.S.C. §§1692 *et seq.*, and Pennsylvania's Fair Credit Extension Uniformity Act, 73 Pa .Stat. Ann. §§2270.1 *et seq*. (West 2008).[2] Also named as a defendant is Bank of

---

[2] This Court has subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. §§1331, 1367(a), and 1441(a), and 15 U.S.C. §§1681p and 1692k(d).

America, N.A. ("BANA")[3] – which, according to the complaint, was the initial assignee of "the loan that was then assigned to Nationstar Mortgage, LLC…" (Compl., Count II at ¶5.)[4]

Presently pending before the Court is a motion by Nationstar and BANA (hereafter, "Moving Defendants") to dismiss the complaint for failure to state a cognizable claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (Docket No. 7). Also pending are Plaintiff's requests for entry of default against Shapiro & DeNardo and entry of default judgment against Nationstar and BANA (Docket No. 15). For the reasons that follow, the motion to dismiss will be granted and Plaintiff's requests for entry of default and/or default judgment will be denied.

## II. PROCEDURAL HISTORY

Plaintiff commenced the instant lawsuit in the Allegheny Court of Common Pleas on June 12, 2015, and the matter was subsequently removed to this Court on July 6, 2015. (*See* Docket No. 1, Docket No. 1-3.) In her complaint, Plaintiff alleges that she sent a "Copyright/ Copy Claim Affidavit Under Constructive Notice" (hereafter, "Affidavit") to Nationstar on March 17, 2014, which requested, among other things, a "validation of the debt owed, … the original promissory note with [Plaintiff's] original signature[,] and certified proof that a loan was given." (Compl. ¶3, Docket No. 1-3.)

The Affidavit, a copy of which was appended to Plaintiff's state court breach-of-contract complaint, contained sixty (60) "points" and requests for admission. (Compl. ¶ 3; *see also* Defs.'

---

[3] BANA is incorrectly identified in the complaint as "Bank of America." For present purposes, the Court will refer to BANA by its correct legal name.

[4] Plaintiff's allegation that BANA was the initial assignee appears to conflict with Nationstar's allegations in its foreclosure complaint that: (i) the original mortgagee was Mortgage Electronic Registration Systems, Inc. ("MERS"), as "nominee for Countrywide Bank, FSB, its successors and assigns" and (ii) MERS assigned the mortgage to Nationstar on April 17, 2014. (*See* Defs.' Ex. B, Docket No. 7-1 at pp. 19-20.) Nevertheless, for purposes of the pending motion to dismiss, the Court will accept as true Plaintiff's averment that BANA was the original assignee of the mortgage loan and that BANA subsequently assigned the loan to Nationstar.

Ex. C, "Affidavit," Docket No. 7-1 at pp. 49-58.) In general, these "points" reflect Plaintiff's theory that (among other things):

- the U.S. economy operates solely on credit and debit and has no currency of value with which to pay a debt (*See* Affidavit ¶ 2);

- Countrywide therefore did not give Plaintiff anything of value in connection with the underlying mortgage (*id.* ¶¶ 2, 20);

- the government has no authority to create money without the signatures of "the people" (*id.* ¶5) ;

- Plaintiff's "private signature" on the promissory note is what gave the note value and thereby made Plaintiff the "originator" of the funds and a creditor to the transaction (*id.* ¶¶ 3-6, 18);

- the note should have been legered as a security but instead was errantly legered as an account receivable for Countrywide, monetized, and sold in the secondary market (*id.* ¶¶ 7-8, 11, 14-15, 19);

- the note was a non-negotiable instrument and could not lawfully be sold to a third party (*id.* ¶¶ 8, 11, 13-14);

- the selling of the note to a third party (i.e. Nationstar) constituted an act of forgery, theft, and trade in a "counterfeit security" (*id.* ¶¶ 8, 14, 19, 42);

- Plaintiff is the rightful "holder–in-due-course" of the note, and Nationstar, as a third party holding the note has no right to enforce, sell, or transfer the note (*id.* ¶¶ 13, 33-37);

- Nationstar is not a valid "creditor," because it did not enter into a valid contract with plaintiff, it did not lend her "anything that requires payback," and it failed to produce evidence that it is a valid creditor (*id.* ¶¶44-45, 48, 50);

- Plaintiff's signature is her "private copyright" and "Copyclaim property" (*id.* ¶51) and Nationstar is unlawfully using her signature without permission for financial gain, thereby causing financial injury to Plaintiff (¶¶ 10, 40, 53, 55-59); and

- the loan transaction effectively created a "Deed in Trust," of which Plaintiff is the true "Trustor" and "Settler" because her signature provided 100 percent of the "valuable consideration given" (*id.* ¶¶ 21-32).

According to the complaint in this lawsuit, Nationstar was required to provide a response to Plaintiff's "Affidavit" within fourteen (14) days. (Compl. ¶3.) Nationstar failed to do so, and

4

Plaintiff then sent Nationstar a "Notice of Default With (Opportunity to Cure)" on April 2, 2014. (Compl. ¶ 4.) This "Notice" allegedly gave Nationstar an additional ten (10) days in which to respond to the "Affidavit." (*Id*.) When no response was received, Plaintiff sent Nationstar a "Notice of Fault in Dishonor (Opportunity to Cure)" on April 12, 2014, which purportedly gave Nationstar another five (5) days in which to respond. (*Id*. at ¶5.) Plaintiff claims that, "[o]n April 22, 2014, a CERTIFICATE OF NON RESPONSE, certified mail #**7013 3020 0000 6896 0078** was sent to verify by Notary Tammy Thompson, that the Administrative Process was completed" for her "alleged" loan. (Compl. ¶6.) Plaintiff also claims that, on September 1, 2008, "according to the three credit bureaus reporting the account with BANK OF AMERICA was paid as agreed." (Compl. ¶7.)

Based on the foregoing averments, Plaintiff claims that the Defendants are liable for various violations of the Fair Credit Reporting Act ("FCRA"), the Fair Debt Collection Practices Act ("FDCPA"), and Pennsylvania's Fair Credit Extension Uniformity Act ("FCEUA"). As compensation for her alleged injuries, Plaintiff seeks judgment in the amount of $36,637,300.00, as well as actual or statutory damages, punitive damages, attorney's fees and costs. (*Id.*)

On July 21, 2015, Defendants Nationstar and BANA filed their joint motion to dismiss the complaint for failure to state a claim upon which relief can be granted (Docket Nos. 7 and 9). In their motion and supporting brief, the Moving Defendants argue that Plaintiff's claims are barred by the doctrine of *res judicata* based on orders rendered in Nationstar's state court foreclosure proceeding and Plaintiff's state court breach-of-contract action. Secondarily, they argue that Plaintiff's claims under the FDCPA are time-barred and that Plaintiff's averments fail to state a viable claim under the FCRA. Finally, the Moving Defendants argue that any claim

5

under Pennsylvania law fails because the FCEUA requires Plaintiff to allege facts that would establish an ascertainable loss resulting from justifiable reliance on Defendants' conduct.

Pursuant to this Court's Standard Order on Motions Practice (*see* Docket No. 8), Plaintiff was required to respond to the motion to dismiss on or before August 11, 2015. (*See id.* at ¶ 2.) Plaintiff failed to submit any written argument within that time frame. Instead, on August 17, 2015, Plaintiff submitted a series of documents which the Clerk of Court collectively designated Plaintiff's "Response to Notice of Removal" (Docket No. 14). This submission consists of: (i) a letter to Judge Michael McCarthy of the Allegheny Court of Common Pleas,[5] (ii) Plaintiff's answer to preliminary objections filed by Nationstar in the state court breach-of-contract action, (iii) a document styled as an "Amendment for the Letter of Rogatory" and "Affidavit"; (iv) a "Counterclaim," which appears to be merely a statement of Plaintiff's alleged damages in the instant case; and (v) blank IRS Forms 4490 and W-9.

Even under the most liberal construction, the content of Plaintiff's August 17, 2015 submission fails to offer any meaningful response to the issues raised in Defendants' motion. Nevertheless, the Court will proceed with its analysis of the pending motion based on its best understanding of Plaintiff's factual and legal assertions.

### III. LEGAL STANDARD

#### A. Rule 12(b)(6)'s Standard of Review

When reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must "'accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the

---

[5] It appears from the record that Judge McCarthy signed an order in Nationstar's foreclosure action permitting Nationstar to serve a notice of the sheriff's sale by mailing the notice to Plaintiff's address on Crestline Court and posting the notice at that same location. (*See* Defs.' Ex. E and Ex. F, Docket No. 7-1 at pp. 96, 99.)

complaint, the plaintiff may be entitled to relief.'" *Eid v. Thompson*, 740 F.3d 118, 122 (3d Cir. 2014) (quoting *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). To survive a Rule 12(b)(6) challenge, the plaintiff's "'[f]actual allegations must be enough to raise a right to relief above the speculative level....'" *Id*. (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (ellipsis in the original)). "Thus, 'only a complaint that states a plausible claim for relief survives a motion to dismiss.'" *Id*. (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). Although the Court must accept the allegations in the complaint as true, "'[it is] not compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation.'" *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013) (quoting *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir.2007)). In addition, merely pleading facts consistent with liability is not sufficient; the plaintiff must plead facts which permit the court to make a reasonable inference that defendant is liable. *Twombly*, 550 U.S. at 556-57; *Iqbal,* 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

B. <u>The Court's Scope of Review</u>

Generally, a district court may not consider matters outside of the Complaint when ruling on a Rule 12(b)(6) motion to dismiss. "If, on a motion under Rule 12(b)(6) ..., matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed.R.Civ.P. 12(d). However, an exception to this rule exists whereby courts may consider, for Rule 12(b)(6) purposes: (i) exhibits that are attached to the complaint, (ii) matters of public record, and (iii) any undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the

document. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir.1997); *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir.1993)).

C. *Pro Se* Litigant

In this case, Plaintiff is proceeding *pro se*. Courts must generally employ less stringent standards when considering *pro se* pleadings than when judging the work product of an attorney. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). When presented with a pro se complaint, the court should construe the complaint liberally and draw fair inferences from what is not alleged as well as from what is alleged. *Dluhos v. Strasberg*, 321 F.3d 365, 369 (3d Cir. 2003). Nevertheless, *pro se* litigants must still allege facts sufficient to support a cognizable legal claim. *See, e.g., Taylor v. Books A Million, Inc*., 296 F.3d 376, 378 (5th Cir.2002); *Riddle v. Mondragon*, 83 F.3d 1197, 2102 (10th Cir.1996).

IV. DISCUSSION

A. Plaintiff's Claims Under the Fair Debt Collection Practices Act

In Count I of the complaint, Plaintiff asserts that the Defendants committed numerous "violations" of the FDCPA,[6] *to wit:*

2. NATIONSTAR MORTGAGE, LLC, violated the FDCPA 15 USC [1692a] §803(4). The term "creditor".

3. NATIONSTAR MORTGAGE, LLC, violated the FDCPA 15 USC §1692-1692k, according to §802a Abusive Practices.

4. NATIONSTAR MORTGAGE, LLC, violated the FDCPA 15 USC §1692(c)(b)(2), Contact of Third Party.

5. NATIONSTAR MORTGAGE, LLC, SHAPIRO AND DeNARDO, LLC and BANK OF AMERICA, violated 15 USC §1692c §805. Communication in connection with a debt collection.

---

[6] Count I asserts that Plaintiff is a "consumer" within the meaning of the FCRA, 15 U.S.C. §1681a(c) (Compl. at Count I, ¶1); however, all of the remaining averments in Count I invoke the FDCPA rather than the FCRA. The Court therefore construes Count I as attempting to state a claim under the FDCPA.

6. NATIONSTAR MORTGAGE, LLC, & SHAPIRO & DeNARDO, LLC, violated 15 USC §1692d §806. Harassment or Abuse.

7. NATIONSTAR MORTGAGE, LLC, violated 15 USC §1692e §807 (2)(A)(B). False and Misleading Representation.

8. NATIONSTAR MORTGAGE, LLC, violated 15 USC §1692f §808. Unfair practices[.]

9. NATIONSTAR MORTGAGE, LLC, violated 15 USC §1692g §809. Validation of debts.

10. NATIONSTAR MORTGAGE, LLC, violated 15 USC §1692i (b) Authorization of Action. NATIONSTAR MORTGAGE, LLC, who is a third party debt collector authorized Shapiro and DeNardo, LLC who is also a third party debt collector to proceed with foreclosure sale and procedure, without legal standing.

11. NATIONSTAR MORTGAGE, LLC, & SHAPIRO & DeNARDO, LLC, violated 15 USC §1692j §812. Furnishing certain deceptive forms.

12. Under 15 USC 1692k §813. Civil Liability, BANK OF AMERICA, LLC, NATIONSTAR MORTGAGE, LLC and SHAPIRO AND DENARDO, LLC are liable for damages for the forelisted [sic] violations.

(Compl. at Count I, ¶¶ 2-12.) Elsewhere in the complaint, Plaintiff alleges that Nationstar violated 15 U.S.C. §1692f(1),[7] by making an "[a]ttempt to collect any amount not authorized by the agreement creating the debt or permitted by law." (Compl. at Count II, ¶4.)

These averments fail to satisfy the pleading standards established by *Twombly* and *Iqbal* in that they consist of nothing more than threadbare recitals of statutory provisions coupled with conclusory allegations of wrongdoing. *See Iqbal,* 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.") (citing

---

[7] The complaint cites "15 USC §1681f (1)," in regards to this alleged misconduct; however, Section 1681f is a provision of the FCRA that merely allows consumer reporting agencies to furnish "identifying information" about consumers to governmental agencies. *See* 15 U.S.C. §1681f. This provision has no subsection "(1)," and, based on the nature of the misconduct alleged in the complaint, it appears that Plaintiff intended to invoke the FDCPA, 15 U.S.C. §1692f(1), rather than the FCRA, 15 U.S.C. §1681(f).

*Twombly*, 550 U.S. at 555). Accordingly, Count I is patently insufficient to state a cognizable claim for relief.

Beyond this deficiency, however, Count I is also untimely.[8] The statute of limitations for bringing a claim under the FDCPA is one year from the date on which the alleged violation occurs. *See* 15 U.S.C. §1692k(d). Here, Plaintiff claims that she sent the "Copyright/Copy Claim Affidavit Under Constructive Notice" to Nationstar on March 17, 2014, pursuant to which she sought "validation of the debt owed" and "certified proof that a loan was given." Thereafter, she sent notices of "default" to Nationstar on April 2 and April 12, 2014, followed by a "Certificate of Non Response" on April 22, 2014. (Compl. ¶¶ 3-6.) According to Plaintiff, the "Certificate of Non Response" completed the "administrative process" for the "alleged loan." Even assuming that the foregoing events could establish a violation of the FDCPA, it is evident from the face of the complaint that these events occurred more than one year prior to June 12, 2015 -- the date on which the instant lawsuit was commenced.

In addition, even though the complaint does not allege specific conduct or dates relative to Nationstar's debt collection activities, it is clear from the public court records appended to the Moving Defendants' motion[9] that Nationstar commenced its foreclosure proceedings in May 2014 and Plaintiff was personally served with the foreclosure complaint that same month. (*See*

---

[8] Although a statute-of-limitations defense generally cannot be asserted in the context of a Rule 12(b)(6) motion, "[t]he law of this Circuit (the so-called 'Third Circuit Rule') permits a limitations defense to be raised by a motion under Rule 12(b)(6), … if the time alleged in the statement of the claim shows that the cause of action has not been brought within the statute of limitations." *Robinson v. Johnson*, 313 F.3d 128, 135 (3d Cir. 2002) (internal quotation omitted). "If the bar is not apparent on the face of the complaint, then it may not afford the basis for a dismissal of the complaint under Rule 12(b)(6)." *Id.* (quotation omitted). In this case, having carefully considered all documents properly within its scope of review, the Court is satisfied that Plaintiff's claim under the FDCPA is untimely on its face.

[9] Courts in this circuit have recognized the propriety of considering public records such as court filings in connection with a statute-of-limitations defense raised in a Rule 12(b) motion. *See, e.g., O'Boyle v. Braverman*, 337 F. App'x 162, 164 (3d Cir. 2009) (district court did not err in considering Tennessee state court documents for purposes of adjudicating Rule 12(b)(6) challenge on statute of limitations grounds); *Turner v. Donnelly,* No. Civ. A. 04-823, 2004 WL 2095447, at *2 (E.D. Pa. Sept. 20, 2004) (dismissing civil rights claim as time-barred based on a review of the pleadings and docket in a state court action).

Defs.' Ex. E, Docket No. 7-1 at p. 96.) The foreclosure action was the culmination of Nationstar's collection activities and, indeed, the complaint in foreclosure alleged that Plaintiff had been delinquent on her payments since January 1, 2014 and had been sent a "Notice of Intention to Foreclose." (*See* Defs.' B, Docket No. 7-1 at pp. 20-21.) Thus, Plaintiff was plainly on notice of Nationstar's attempt to collect on her mortgage debt more than one year prior to the filing of this lawsuit. As a result, any FDCPA claim premised on that conduct is now time-barred. Count I of the complaint will therefore be dismissed.

B. Plaintiff's Claims Under the Fair Credit Reporting Act

In Count II of the complaint, Plaintiff purports to assert a claim under the FCRA. Although the complaint states that Plaintiff is a "consumer" and Nationstar is a "furnisher of information" within the meaning of the Act (*see* Compl. at Count II, ¶¶1-2), the complaint is devoid of any additional allegations that could state a plausible basis for liability under the FCRA. Plaintiff avers that Nationstar "negligently violated the FCRA," including 15 USC §1681f (*see* Compl. at Count II, ¶¶ 3-4); however, Section 1681f merely provides that consumer reporting agencies may furnish "identifying information" about consumers to governmental agencies without running afoul of any limitations on the use of consumer reports as set forth in 15 U.S.C. §1681b. *See* 15 U.S.C. §1681f.

Elsewhere in Count II, Plaintiff appears to invoke 15 U.S.C. §1681s-2 as a basis for her claim. (*See* Compl., Count II at ¶ 2.) This provision addresses the various responsibilities that are statutorily imposed on "furnishers of information" when the latter supply consumer-related information to a consumer reporting agency. Subsection 1681s-2(a) outlines the "furnisher's" general duty to provide accurate information about a consumer. As the moving Defendants point out, however, the FCRA does not afford a private right of action to redress violations of §1681s-

11

2(a). *See* 15 U.S.C. §1681s-2(c), (d); *SimmsParris v. Countrywide Fin. Corp.,* 652 F.3d 355, 358 (3d Cir. 2011); *Huertas v. Galaxy Asset Mgmt.,* 641 F.3d 28, 34 (3d Cir. 2011); *Vullings v. Trans Union, LLC,* Civil Action No. 15—2814, --- F. Supp. 3d ---, 2015 WL 4130784 (E.D. Pa. July 9, 2015); *Crisafulli v. Ameritas Life Ins. Co.,* Civil Action No. 13-5937, 2015 WL 1969176, at *5 (D.N.J. April 30, 2015).

Subsection 1681s-2(b), by contrast, does afford a private right of action. *See SimmsParris,* 652 F.3d at 358; *Bowen v. Bank of America,* Civil Action No. 14-3531 (RBK/AMD), 2015 WL 5542489, at *4 (Sept. 18, 2015) (internal quotation marks and citation omitted). "This section of [the] FCRA requires that furnishers of information take certain steps to investigate and correct inaccurate information they have already relayed to the credit rating agencies." *Crisafulli,* 2015 WL 1969176, at *5 (citing *Burrell v. DFS Servs., LLC*, 753 F.Supp.2d 438, 447 (D.N.J.2010)). In order to state a claim under §1681s-2(b), however, a plaintiff must allege that: (1) she sent notice of disputed information to a consumer reporting agency, (2) the consumer reporting agency then notified the defendant furnisher of the dispute, and (3) the furnisher failed to investigate and modify the inaccurate information. *Bowen*, 2015 WL 5542489, at *4; (citation omitted); *Ruff v. America's Servicing Co.,* Civil Action No. 07-0489*,* 2008 WL 1830182, at *4 (W.D. Pa. Apr. 23, 2008)).

Here, Plaintiff has not pled any of the elements required for a §1681s-2(b) claim: she has not alleged that she filed a notice of dispute with any reporting agency, or that Nationstar was notified of such a dispute by such consumer reporting agency, or that Nationstar thereafter failed to investigate and modify the information. Instead, Plaintiff claims that she notified Nationstar directly concerning her efforts to obtain "validation of the debt owed." (Compl. ¶3.) This is insufficient because, for purposes of §1681s-2(b) liability, "[n]otice … must be given by a credit

reporting agency, and cannot come directly from the consumer." *SimmsParris*, 652 F.3d at 358 (citing cases).

Alternatively, Plaintiff appears to be alleging that Nationstar should have known that the alleged debt was invalid because "[o]n September 1, 2008[,] according to the three credit bureaus reporting[,] the account with the BANK OF AMERICA was paid as agreed." (Compl. ¶7.) This allegation also fails to support a plausible FCRA claim for numerous reasons. To begin, the averment asserts an irrelevant fact insofar as it bears on the status of Plaintiff's credit prior to September 14, 2008 -- the date on which she executed the subject mortgage. (*See* Defs.' Ex. A and B, Docket No. 7-1.) Second, Plaintiff's averments suggest she may be operating under the mistaken assumption that Nationstar's alleged purchase of the mortgage from BANA extinguished any obligation that Plaintiff had on the underlying loan. (*See* Compl. at Count II, ¶¶ 4-5.) Finally, even setting aside the fallacy of this theory, Plaintiff's averments fail to comport with the statutory mechanism envisioned by the FCRA. To reiterate:

> [u]nder the statutory framework and clear language of [§1681s-2(b)], … a consumer must first alert the credit reporting agency that reported the allegedly erroneous information of a dispute. It is then up to the reporting agency to inform the furnisher of information that there has been a dispute, thereby triggering the furnisher's duty to investigate. It is only when the furnisher fails to undertake a reasonable investigation following such notice that it may become liable to a private litigant under § 1681s–2(b).

*SimmsParris,* 652 F.3d at 358. Here, as noted, there is no allegation that Nationstar was ever notified by a credit rating agency that Plaintiff had lodged a dispute concerning her credit status. Thus, no predicate events are alleged as would have prompted a statutory obligation on Nationstar's part to investigate and/or take corrective action. Accordingly, Count II will be dismissed for failure to state an actionable claim under the FCRA.

C.  Plaintiff's Claim Under Pennsylvania's Fair Credit Extension Uniformity Act

In Count II of the complaint, Plaintiff also makes the conclusory averment that Nationstar violated Pennsylvania's Fair Credit Extension Uniformity Act ("FCEUA"), 73 Pa. Stat. Ann. §§2270.1 et seq. (West 2008). The complaint does not specify which provisions of the FCEUA were supposedly violated, nor does it set forth any factual averments that could support a plausible violation of the statute. Accordingly, any putative claim under the FCEUA is patently deficient under the pleading standards established by *Twombly* and *Iqbal*.

Construing the complaint liberally, it appears Plaintiff may have intended to allege a violation of 73 Pa. Stat. Ann. §2270.4(a), which states that any violation of the FDCPA by a debt collector "shall constitute an unfair or deceptive debt collection act or practice under [the FCEUA]" as well. Further, it appears Plaintiff may be alleging that Nationstar violated the FDCPA by attempting to collect an amount "not authorized by the agreement creating the debt or permitted by law." (Compl. at Count II, ¶4.) *See* 15 U.S.C. §1692f(1) (prohibiting "[t]he collection of any amount… unless such amount is expressly authorized by the agreement creating the debt or permitted by law.") As previously noted, it appears to be Plaintiff's (misguided) theory that, because the mortgage loan was allegedly "assigned and or transferred" from BANA to Nationstar, "therefore the debt is no longer owed by [Plaintiff]." (Compl. at Count II, ¶5.)

Accepting these allegations at face value, they do not state a viable claim under the FCEUA. As the moving Defendants correctly observe, FCEUA violations are enforceable in private actions brought under Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 Pa. Stat. Ann. §§201-1 *et seq*. (West 2008). *See* 73 Pa. Stat. Ann. §2270.5(a). However, private actions under the UTPCPL involve certain pleading requirements

that are not satisfied in this case. Specifically, a private action asserted under the UTPCPL must allege that the plaintiff justifiably relied on the defendant's prohibited conduct and thereby suffered an "ascertainable loss of money or property, real or personal." *See* 73 Pa. Stat. Ann. §201-9.2(a) ("Any person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by any person of a method, act or practice declared unlawful" under the UTPCPL "may bring a private action to recover actual damages or one hundred dollars ($100), whichever is greater."); *Kern v. Lehigh Valley Hosp.,* 108 A.3d 1281, 1288-90 (Pa. Super. Ct. 2015) (explaining that the element of justifiable reliance is part of a private action under the UTPCPL and, therefore, FCEUA claims brought under the UTPCPL must plead justifiable reliance by the plaintiff on the defendant's prohibited action). In this case, the complaint is devoid of any allegations that plaintiff justifiably relied on the Defendants' prohibited conduct. Accordingly, no claim has been stated for an alleged violation of the FCEUA.

### D. Amendment of the Pleadings

"[I]f a complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips v. County of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008) (citing *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir.2004)). This rule applies even when the plaintiff does not request leave to amend. *Id.* (citing *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir.2002)).

In this case, the Court finds that further amendment of Plaintiff's claims would be futile. As previously discussed, Plaintiffs' claims under the FDCPA are time-barred, and there is nothing in the record to suggest that Plaintiff can identify actionable misconduct on the part of

15

Defendants that occurred within the applicable limitations period. Similarly, with regard to Plaintiff's FCRA and FCEUA claims, no information exists in the record which suggests that Plaintiff can restate her claims in a manner that would cure the deficiencies identified in this Memorandum Opinion. Having been served with the motion to dismiss in this matter, which identifies the very pleading deficiencies discussed herein, Plaintiff failed to submit any type of meaningful response. Her submissions to date, both in this litigation and in her state court breach of contract action, have consisted of little more than disjointed and/or conclusory averments coupled with fanciful legal theories. To the extent that Plaintiff's legal claims in this case are discernable, it appears that Pennsylvania's rules of preclusion[10] present an insurmountable bar to any curative amendment. All of Plaintiff's claims in this matter derive from actions taken by Nationstar and/or its lawyers in connection with Nationstar's efforts to collect payments under the September 14, 2008 mortgage. To put a finer point on it, all of Plaintiff's claims appear to be premised on the general theory that Nationstar had no right to

---

[10] "Federal courts are required to give state court judgments the same preclusive effect that the issuing state courts would give them." *Moncrief v. Chase Manhattan Mortgage Corp.,* 275 F. App'x 149, 153 (3d Cir. 2008) (citing *Rycoline Prods., Inc. v. C&W Unlimited,* 109 F.3d 883, 887 (3d Cir. 1997)). Under Pennsylvania law, "*res judicata,*" or "claim preclusion"

> is a doctrine by which a former adjudication bars a later action on all or part of the claim which was the subject of the first action. Any final, valid judgment on the merits by a court of competent jurisdiction precludes any future suit between the parties or their privies on the same cause of action. [Claim preclusion] applies not only to claims actually litigated, but also to claims which could have been litigated during the first proceeding if they were part of the same cause of action.

*Id.* (quoting *Balent v. City of Wilkes–Barre*, 669 A.2d 309, 313 (Pa. 1995) (alteration in the original)). "Issue preclusion" – a related doctrine, "prevents a party from re-litigating an issue that was actually and necessarily determined by a court of competent jurisdiction." *Wilson v. Concern Prof'l Servs.,* Civil Action No. 4:14-cv-1409, 2015 WL 6166819, at *2 (M.D. Pa. Oct. 20, 2015) (citing *Montana v. United States,* 440 U.S. 147, 154 (1979)). Under Pennsylvania law,

> issue preclusion applies when four elements are established: (1) the issue decided in the prior adjudication was identical to the one presented in the current action; (2) there was a final judgment on the merits in the first action; (3) the party against whom the plea is asserted was a party or in privity with a party to the prior adjudication; and (4) the party against whom it is asserted had a full and fair opportunity to litigate the issue in question in that prior action.

*Id.*, at *3 (citing *Safeguard Mut. Ins. Co. v. Williams*, 345 A.2d 664, 668 (Pa.1975), and *Kelley v. TYK Refractories Co.*, 860 F.2d 1188, 1194 (3d Cir. 1988)).

demand or collect any payment from Plaintiff relative to that mortgage. As the moving Defendants point out, this issue was already conclusively litigated and decided adversely to Plaintiff in the state court mortgage foreclosure proceedings and the state court breach of contract action. (*See* Defs.' Exs. B, E, F, and G, Docket No. 7-1.) Accordingly, Plaintiff is now precluded from asserting any claim that calls into question the validity of Nationstar's right to collect payments under the September 14, 2008 mortgage. *See, e.g., Laychock v. Wells Fargo Home Mortgage,* 399 F. App'x 716, 718-19 (3d Cir. 2010) (plaintiff in federal lawsuit was precluded from asserting her claim under the Pennsylvania UTPCPL that bank had improperly "double debited" mortgage payments from her account where the claim had already been decided adversely to plaintiff in a prior state foreclosure action); *Moncrief v. Chase Manhattan Mortgage Corp.,* 275 F. App'x 149, 153-54 (3d Cir. 2008) (plaintiff's claims in federal court action that state foreclosure judgment had been premised on a mortgage fraud scheme and that bank did not have standing to bring the foreclosure action were barred by prior foreclosure judgment). In light of the foregoing, no curative amendment is feasible in this case, and Plaintiff's complaint will therefore be dismissed with prejudice as against all of the named Defendants.[11]

E. <u>Plaintiff's Motion for Entry of Default and Default Judgment</u>

Finally, the Court notes that Plaintiff has filed a set of documents which have been designated on the docket as a "Request for Entry of Default" against Shapiro & DeNardo and a "Request for Entry of Default Judgment" against BANA and Nationstar (Docket No. 15). These

---

[11] *See Bonny v. Soc'y of Lloyd's*, 3 F.3d 156, 162 (7th Cir.1993) ("A court may grant a motion to dismiss even as to nonmoving defendants where the nonmoving defendants are in a position similar to that of moving defendants or where the claims against all defendants are integrally related."); *Piemonte v. Viking Range, LLC*, No. 2:14-CV-00124 WJM, 2015 WL 5666148, at *4 (D.N.J. Sept. 25, 2015) (following and applying *Bonny*); *Flick v. Chartwell Advisory Group Ltd.*, Civil Action No. 14–06953, 2015 WL 4041969, at *7 (E.D. Pa. July 2, 2015) (dismissing claims against nonmoving defendant *sua sponte* where those claims suffered from the same defects raised in the moving defendants' motion to dismiss; citing supporting cases).

requests will be denied inasmuch as there is no indication in the record that Defendant Shapiro & DeNardo has been properly served, and the Court's disposition of the pending motion to dismiss renders Plaintiff's request for entry of a default judgment inappropriate. *See Mendez v. Puerto Rican Int'l Cos., Inc.,* Civ. No. 05–174 (consolidated with Civ. No. 05–199), 2015 WL 721031, at *2-3 (D.V.I. Feb. 18, 2015) (denying default judgment with respect to claims that appeared to be legally deficient); *Bush v. City of Phila. Police Dep't*, 684 F. Supp. 2d 634, 639 (E.D. Pa. Feb. 4, 2010) (default judgment denied, in part, because plaintiff's claim was insufficient as a matter of law); *Andrews v. Wallace*, No. 96–7180, 1997 WL 186322, at *3 (E.D. Pa. Apr. 14, 1997) (denying default judgment because "claims which are legally insufficient are not established by default").

## V. CONCLUSION

Based upon the foregoing reasons, the pending motion to dismiss will be granted, the complaint will be dismissed with prejudice as against all named Defendants, and Plaintiff's requests for entry of default and/or default judgment will be denied.

An appropriate order follows.

*s/ Nora Barry Fischer*
Nora Barry Fischer
United States District Judge

Date:	October 27, 2015

cc:	Lisa M. Parker
	38 Crestline Court
	Pittsburgh, PA 15221
	(via First-Class U.S. Mail)

	All counsel of record
	(via CM/ECF)